UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

LADONTE MONTEZ SMITH,        )
        )
       Petitioner,       )
        )
v.        )       No. 3:11-cv-00465
        )       Judge Campbell
TONY PARKER, Warden,        )
        )
       Respondent.       )

## M E M O R A N D U M

## I.    INTRODUCTION AND BACKGROUND

The petitioner, Ladonte Montez Smith,[1] has filed a *pro se* petition for a writ of *habeas corpus* under 28 U.S.C. § 2254. (Docket No. 1). The petitioner is an inmate at the Northwest Correctional Complex in Tiptonville, Tennessee. The petitioner challenges the legality of his confinement under a 1999 judgment of the Davidson County Criminal Court in Nashville, Tennessee, convicting him of one count of first degree murder and two counts of attempted first degree murder. *State of Tennessee v. Ladonte Montez Smith,* No. M199700087CCAR3CD, 1999 WL 1210813 (Tenn. Crim. App. Dec. 17, 1999) (perm. app. denied, Oct. 9, 2000). The petitioner's convictions stem from a drive-by shooting during which a child was shot and killed. The trial court sentenced the defendant to life with the possibility of parole. (*Id.*)

Smith was denied relief on direct appeal. *Id.* He then filed a petition for post-conviction relief on February 1, 2001. The post-conviction court denied the petition, and the Court of Criminal Appeals affirmed this denial. *See State of Tennessee v. Ladonte    Smith*, No.

---

[1] Throughout this memorandum, Ladonte Montez Smith is referred to as "petitioner," "defendant," "Smith," and "appellant" interchangeably.

M200802095CCAR3PC, 2010 WL 2836102 (Tenn. Crim. App. July 20, 2010). The petitioner did not seek further appeal.

On May 16, 2011, Smith timely filed the instant petition for writ of habeas corpus. (Docket No. 1). The petitioner names Tony Parker, the warden of the Northwest Correctional Complex, as the respondent. In his petition, the petitioner alleges numerous claims of ineffective assistance of counsel. Although the petition does not precisely delineate each claim, the court surmises that the petitioner contends that trial counsel was ineffective for failing to: (1) object to a jury instruction on transferred intent (Doc. No. 1, ¶ II); (2) "advance the argument that there were separate verdicts for each defendant at trial" (Doc. No. 1, ¶ II); (3) adequately cross-examine State's witness Arnett Hayes (Doc. No. 1, ¶ II); (4) interview State's witnesses Gary Jordan and Arnett Hayes and potential defense witnesses Vira Ashby and Chaven Marques McAfee (Doc. No. 1, ¶¶ II-VII, XI- XII); (5) fully investigate the petitioner's case, specifically, failing to discover a certain allegedly exculpatory police report (Doc. No. 1, ¶¶ VIII-X); (6) object to certain alleged hearsay statements admitted at trial (Doc. No. 1, ¶ XXI); (7) move for severance (Doc. No. 1, ¶ XXII); (8) present mitigation evidence at sentencing (Doc. No. 1, ¶¶ XXIII-XXIV); (9) object to the State's introduction of certain evidence (Doc. No. 1, ¶¶ XXIX-XXX); (10) "allow" the petitioner to testify (Doc. No. 1, ¶¶ XXXI-XXXIV).

In his answer, the respondent notes that, although paragraph II of the petition purports to enumerate all of the petitioner's claims, paragraph II contains three claims (the petitioner's claims (5)-(7) in paragraph II) that are never discussed again in the petition or accompanying memorandum. (Docket No. 11 at p. 2). Paragraph II also fails to enumerate certain claims discussed at some length later in the petition. As a result, in his answer the respondent renumbered the petitioner's

claims (5)-(7) as (1)-(3) above, and enumerated the petitioner's remaining claims in the order they are raised in paragraphs III-XXXIV of the petition. For completeness, clarity, and ease of reference, the court adopts the respondent's numbering system herein.

Upon its receipt, the court conducted a preliminary examination of the petition and determined that the petitioner had stated a colorable claim for relief. Accordingly, the court entered an order on June 29, 2011, directing the respondent to answer or otherwise respond to the petition. (Docket No. 7). The respondent filed an answer urging the court to deny the petition and dismiss the action. (Docket No. 11). The petitioner filed a reply in opposition to the respondent's motion to dismiss. (Docket No. 15).

Upon consideration of the record, the court concludes that an evidentiary hearing is not needed. *See Smith v. United States*, 348 F.3d 545, 550 (6th Cir. 2003)(an evidentiary hearing is not required when the record conclusively shows that the petitioner is not entitled to relief). Therefore, the court shall dispose of the petition as the law and justice requires. Rule 8(a), Rules — § 2254 Cases.

Jurisdiction and venue in this court are appropriate under 28 U.S.C. § 2241(d) because the petitioner was convicted in the Davidson County Criminal Court in Nashville, Tennessee.

## II.     SUMMARY OF THE EVIDENCE

On direct appeal, the Tennessee Court of Criminal Appeals offered the following summary of the evidence presented at the defendant's trial:

> Arnett Hayes testified that on Sunday, December 17, 1995, he and Chevron "Chevy" McAfee were driving around in a car Hayes had borrowed for the day from William "Tiger" Harris as part of a drug transaction. McAfee wanted to go to the home of the Smith defendants' mother, and despite Hayes's preference to the contrary, he drove to the residence. When they arrived, Hayes observed a

suspicious gray van sitting ten to fifteen feet from the house with its lights on. Upon seeing the van, Hayes and McAfee drove to Vira Ashby's house. Vira Ashby is Dallas Smith's girlfriend; Dallas Smith is the Smith defendants' brother. The defendants, Gary Jordan, Mitchell "Mo" Smith, Vira Ashby, and other persons were there. After a while, Hayes told the Smiths what he had seen at their mother's house. The defendants became animated and anxious to go to the house. Defendant Shaun Fly Smith asked to use the car Hayes was driving, and Hayes agreed.  The defendants and Gary Jordan went into the back room and retrieved guns, coats, gloves and ski masks. Defendant Joe Davis Martin had a long rifle-like gun; Gary Jordan had a shorter gun with a pump on the end; Defendant Ladonte Montez Smith had a Tec-9 or an Uzi. Hayes did not see Shaun Fly Smith with a gun, but he thought Smith probably had one.

About an hour and a half later, Vira Ashby received a phone call. After the call, she informed Hayes that he was to say the car had been stolen and that he should not talk to the police. She also informed him not to worry, "they" would take care of the problem and the car. Ashby also informed Mitchell Smith, "The problem was solved. It was through, taken care of." Ashby later received a second call. According to Hayes, the caller wanted everyone to leave the house and for the guns "and stuff" to be put up. Hayes observed others in the house put guns in the attic. Hayes spoke with Shaun Fly Smith by telephone two times. Smith told Hayes to say that he had been robbed of the car at a market down the street by individuals wearing ski masks. If Hayes was taken to jail, he should not talk to the police, and Smith would hire an attorney for Hayes.

Several hours after he had arrived at Ashby's residence, Hayes eventually got a ride to his brother's house. Hayes did not go to the police that night, although he cooperated with them once they came to his house.

Gary Jordan, a state witness, testified that he was being held on a first degree murder charge and two attempted first degree murder charges. He was testifying for the state as part of an agreement whereby his case was severed from that of the Smiths and Martin, and he hoped to gain favorable consideration at sentencing for his truthful testimony.

In December 1995, Jordan was living back and forth between Vira Ashby's house and his aunt's house. Jordan's aunt is the Smiths' mother. About two weeks before December 17, 1995, Jordan and

Shaun Fly Smith committed an armed robbery of Willie Gene, who is an associate of Phillip Patton, and someone named Cory. The heist yielded four kilos of cocaine, which had a street value in excess of $ 100,000. Jordan had expected to get one kilo for his participation in the crime, but he received nothing. Nevertheless, he testified he was not upset that he had not received anything.

According to Jordan, on December 16 Mitchell Smith, who is the Smith defendants' brother, was shot in the foot outside his mother's home. Jordan believed the shooting was in retaliation for the robbery Jordan and Shaun Fly Smith committed approximately two weeks earlier. Prior to Mitchell Smith being shot, Jordan had overheard Shaun Fly Smith arguing on the telephone about the robbery. After Mitchell Smith was shot, Shaun Fly Smith asked Jordan to get some ammunition, ski masks and gloves, which Jordan did.

There had been a plan for the defendants and Jordan to meet the individuals aggrieved over the drug robbery, which Jordan surmised would be a confrontation to settle the dispute through gunfire. That confrontation never took place because of police presence outside Vira Ashby's home at the time the defendants and Jordan were about to depart.

Jordan stood guard at Ashby's house all night on December 16 and the morning of December 17. When he woke up in the early afternoon, Arnett Hayes and Chevron McAfee were discussing a suspicious van they had seen in front of the Smiths' mother's house. Jordan and the defendants selected weapons -- Jordan had a 12 gauge Bryan pump shot gun, Shaun Fly Smith had a 9 millimeter Glock, Ladonte Montez Smith had an assault rifle. Martin had a .44 revolver and an assault rifle. The defendants and Jordan also took ski masks and gloves. They loaded into a car they got from Hayes. They drove by the Smiths' mother's house and through a housing project known as "Dodge City" but saw no sign of the van. They also checked some houses where some of the people associated with Phillip Patton lived. According to Jordan, they thought Phillip Patton's associates were behind Mitchell Smith's shooting.

Finally, at about 2:00 p.m., the defendants and Jordan approached a neighborhood market which was a known hangout for Phillip Patton's associates. As they rounded the corner to the store, they donned the gloves and ski masks. Shaun Fly Smith called out, "What's up, Kevin?" to Kevin Robinson, and started firing. Jordan

fired next, but his gun jammed. Martin and Ladonte Montez Smith proceeded to fire, as well, as the car drove by the market.

The defendants and Jordan abandoned the car one street over from Dodge City, taking the weapons with them. They threw out as many shells as they could on the way. They ran through a yard and scaled a fence to get into Dodge City. The defendants and Jordan left the weapons in the trunk of a car belonging to one of Shaun Fly Smith's friends. A person who Jordan did not know took them to an apartment where two people named Andre and Anthony lived. Later that evening, Ladonte Montez Smith and Jordan were given a ride to a hotel, which they left within a couple of hours to go to Atlanta with Shaun Fly Smith and Tim Covington in a white BMW. Jordan lived on the lam in Atlanta, Nashville and McMinnville for a few weeks, but in January he turned himself in to the authorities.

By his own admission, Jordan was a hustler at the time of the crimes, meaning he sold drugs and committed robberies. Likewise, Jordan knew the defendant Martin to be a hustler with whom he had used cocaine. Jordan identified Tim Covington as a drug dealer who worked for Shaun Fly Smith. A police officer testified that Phillip Patton was a known drug dealer, as well.

Unfortunately, the defendant's and Jordan's actions had tragic consequences. Twelve-year-old Jermiyer Warfield, who was in the market purchasing ice cream, was killed by the gunfire. Kevin Robinson was shot in the leg; however, his injuries were not fatal. Congsuinia Holland, Jermiyer Warfield's sixteen-year-old cousin, discovered a bullet hole in her jeans after the incident. Several other people who were in the market escaped injury, despite the extensive gunfire.

Other evidence offered by the state established that Phillip Patton owned the market at which the shooting occurred. The market was managed by Tim Miller and Marcus Jordan. Miller was inside the store at the time of the crimes.

Arnett Hayes identified the car he had loaned to the defendants and Jordan in a photographic exhibit. Several other witnesses identified this vehicle from the photograph, as well. During his testimony, Kevin Robinson identified the photograph of the vehicle in which he had seen three men wearing ski masks with guns pointed out the window. Detective Clinton Vogel, who was walking toward the market at the time of the shooting, identified the same

photograph as depicting the vehicle in which he had seen four black males wearing ski masks shooting out of the car at the market. William Seats, who was walking to work at the time of the incident, heard shooting and saw a car with four people wearing ski masks and hoods inside. The car was traveling in the direction of Dodge City. He identified the car in the photographic exhibit. Billy Wright, who lives on a street behind Dodge City, saw a suspicious car park near his house. Four young, black men hurriedly got out of the car and went over the fence behind his house into Dodge City. One of the men had something under his coat. Later, the police arrived and took the car away. Mr. Wright identified the car from the photograph.

Within a short time after the crimes, officers who arrived at the scene of the shooting and the abandoned car collected evidence, including shells and bullets. A search warrant was executed at the Ashby residence on December 19, two days after the shooting. Guns and ammunition were recovered from the attic area over the kitchen. Photographs of guns and ammunition were also found, although the weapons depicted in these photographs were not recovered.

A forensic scientist testified that 7.62 x 39 cartridge casings from the crime scene were fired from the same weapon as the same type casings found in the abandoned car. These spent casings had been fired from a semi-automatic or fully automatic assault rifle. Live 7.62 x 39 rounds recovered from the Ashby residence were the same manufacturer as the spent casings recovered earlier. Spent 9 millimeter bullets recovered had characteristics most commonly seen with firing from a Glock semi-automatic pistol. Markings at the scene were consistent with a shotgun blast, and the ammunition recovered from Ashby's house included shotgun shells. However, none of the weapons recovered from the search of the Ashby house two days after the shooting could be determined to have fired the shell casings recovered.

During Shaun Fly Smith's case-in-chief, Timothy Covington recalled that the last time he had seen Shaun Fly Smith was in a game room on a Sunday afternoon. He could not recall, however, whether this was the same Sunday as the shooting. Covington testified that he had not gone to Georgia with the defendants and Jordan on December 17 or 18, 1995, although he conceded that his former roommate owned a white BMW.

Mitchell Smith, who was serving time for drug possession, testified that he was the only person at Ashby's house on December 17 when Arnett Hayes and Chevron McAfee came by. Smith claimed

the only guns and ammunition he had ever seen at the Ashby residence was the gun he himself carried. Mitchell Smith essentially denied that any of the defendants were there that day; he denied having seen Jordan at the Ashby house on any occasion.

Shaun Fly Smith took the stand and testified he had been with two of his four young children and his sister on the afternoon of the shooting. After an outing at the movies and a pizza parlor, his sister had taken his children home and he had gone to a pool hall. When he left the pool hall, he went to a girl's house in Antioch. This defendant denied any knowledge of a drug robbery. He claimed he and Jordan had been friends in the past, but they were no longer friends following an altercation in which Shaun Fly Smith beat up Jordan. This defendant denied any participation in the shootings with which he was charged. He also denied attempted intimidation of Arnett Hayes in order to keep him from testifying. He claimed a facial injury was a result of an altercation in jail, rather than a struggle with Hayes. He denied any conflict with Phillip Patton, declaring that Patton "is all right with me." He denied any prior acquaintance with Martin. Shaun Fly Smith also testified he had lived on the lam for six months before he was apprehended. He claimed he had heard a "police murder squad" was looking for him to kill him.

Joe Davis Martin testified on his own behalf. He claimed he was living with his girlfriend, Angelina Majors, in December 1995. He had been temporarily disabled in a car wreck and was unable to work; however, his girlfriend was working at a nursing home on December 17. On that date, the defendant Martin was home cooking dinner. Miss Majors called this defendant on her breaks around 10:00 a.m., 12:30 p.m. and 2:15. She made a third call right before she left work, and she arrived home around 4:00 p.m. Martin denied any involvement with the shooting on December 17, and he denied any previous acquaintance with his co-defendants, Arnett Hayes, Gary Jordan, Vira Ashby or Dallas Smith. He denied having ever been to Ashby's house.

Defendant Martin also offered the testimony of Angelina Majors. She echoed Martin's testimony that she was working on December 17 and that she had called him at their home on her breaks and he was cooking dinner. She acknowledged that she was still romantically involved with Martin and visited him in jail.

Ebony McAllister testified that she went to Martin's and Majors' home after she and Majors got off work on December 17, and

Martin was present and had cooked dinner.

Ladonte Montez Smith did not offer any evidence.

In rebuttal, the state offered evidence that Anthony McMillan, Tim Covington's roommate, owned a white BMW. Covington had been interviewed by the authorities, and he said he had last seen Shaun Fly Smith at the end of December, not on December 17, when Smith had paged him to meet at a game room. The state also offered evidence that Shaun Fly Smith had given a false name when he was apprehended.

On this evidence, the jury convicted all three defendants of premeditated first degree murder for the killing of Jermiyer Warfield. All three defendants were convicted of attempted first degree murder of Kevin Robinson. The Smiths were convicted of attempted first degree murder of Timothy Miller, and Joe Davis Martin was convicted of attempted second degree murder of Timothy Miller.

At the second phase of the trial, the state sought life without possibility of parole for each defendant's first degree murder convictions. Shaun Fly Smith testified about his four young children and his desire to have a relationship with them someday. He also expressed his dissatisfaction with his trial counsel's representation during the guilt phase of the proceedings. After leaving the witness stand, Shaun Fly Smith physically assaulted his trial counsel in the presence of the jury. The court ordered Shaun Fly Smith removed from the courtroom for the remainder of the proceedings. Joe Davis Martin took the stand during the sentencing phase and professed his innocence. Ladonte Montez Smith did not present any evidence.

The jury returned a sentence of life with possibility of parole for each of the three defendants' first degree murder convictions. At a later date, the trial court held a sentencing hearing for each of the defendants' remaining crimes.

*Smith*, 1999 WL 1210813, at **1-6 (internal footnotes omitted).

The Court of Criminal Appeals summarized the evidence presented at the petitioner's state post-conviction hearing as follows:

The post-conviction court held a hearing on the petition. At the hearing, Petitioner testified that he was tried along with two

co-defendants, including Ladonte Shaun Smith (his brother), and Joseph Martin. Another co-defendant, Gary Jordan, was not tried with them because he was going to testify for the State at trial.

Petitioner expressed his complaints regarding trial counsel. Specifically, Petitioner complained that he was told by trial counsel that a motion to sever was filed. Petitioner later discovered that there was no severance motion filed in the case. Petitioner felt that it was not good trial strategy to try the cases together because a lot of the evidence regarding the co-defendants was not applicable to his case. Petitioner stated that the testimony of Mr. Jordan was the only testimony that implicated him in the crimes and that there was nothing to corroborate Mr. Jordan's testimony.

Petitioner also complained that trial counsel failed to investigate two of the alibi witnesses that he suggested: Mario McGee and Dallas Smith. According to Petitioner, these witnesses would place him elsewhere at the time of the shooting. Petitioner admitted that he did not know if the alibi witnesses had ever been interviewed but that trial counsel did not give him a reason for failing to interview witnesses. Further, Petitioner stated that trial counsel failed to file a "Notice of Alibi" with the trial court despite advising the trial court that alibi witnesses might be presented.

Petitioner stated that a change of venue would have been appropriate in the case due to the large amount of pretrial publicity. In fact, Petitioner recalled a newspaper article that appeared on the morning of the trial. Petitioner acknowledged that trial counsel questioned potential jurors about the article, and none of the jurors stated that they would be unable to form an impartial opinion based on the publicity. However, Petitioner felt that trial counsel should have argued for a change of venue or a postponement of the trial.

Petitioner informed the post-conviction court that trial counsel failed to challenge the testimony of Mr. Jordan even though the testimony was detrimental to Petitioner's case. Specifically, Petitioner stated that trial counsel could have more aggressively cross-examined Mr. Jordan. Petitioner further complained that trial counsel did not present any evidence on his behalf and failed to allow Petitioner to testify at trial. Petitioner stated that trial counsel told him that it was not in his best interest to testify.

Petitioner testified that trial counsel failed to file a motion to exclude the introduction of photographs of a weapon that was similar

to the weapon used in the shooting. Further, trial counsel failed to object to statements Petitioner claimed were prejudicial and made during the State's closing argument. Petitioner also stated that trial counsel failed to interview State's witnesses, Arnett Hayes and Mr. Jordan.

Trial counsel testified at the hearing. At that time, trial counsel had been a criminal court judge for nearly five years. Prior to becoming a judge, trial counsel practiced law for approximately twenty years, and fifty percent of the practice was devoted to criminal law. Trial counsel testified that he had handled "thousands" of cases during private practice. Trial counsel was appointed to represent Petitioner. In the course of the representation, Petitioner sought and obtained discovery materials from the State and met with Petitioner ten to twelve times prior to trial. Trial counsel insisted that he attempted to interview all pertinent witnesses, including State witnesses. However, trial counsel admitted that he did not interview Mr. Jordan and Harry Ashby because they were both represented by counsel and refused interviews. Trial counsel was unable to locate Arnett Hayes.

Trial counsel testified that he met with and discussed trial strategy with Petitioner prior to trial and also met with Petitioner's mother. After reflecting on the trial, trial counsel felt that there was nothing that surprised him at trial. Trial counsel opined that he had filed all the necessary motions. In fact, trial counsel testified that in his opinion, a motion for severance and a motion for change of venue were unnecessary because a Nashville jury would be appropriate for Petitioner. Trial counsel recalled that he filed several motions in limine.

Further, trial counsel testified that Petitioner made it clear to him that he did not want to testify at trial. According to trial counsel, Petitioner's sole defense was that he was with his brother (and co-defendant) Shaun Smith, at the time of the incident. Trial counsel was unable to corroborate this alibi. Because of the weakness of Petitioner's alibi, coupled with the strength of the co-defendants' alibis, trial counsel determined that the best trial strategy would be to allow the alibis of the other co-defendants to effectively beat the testimony of Mr. Jordan. Trial counsel attempted to create as much reasonable doubt as he could through the effective cross-examination of Mr. Jordan.

Trial counsel could not recall if he failed to object to any

hearsay issues. Further, trial counsel testified that the State supplied the potentially exculpatory police reports during discovery. Trial counsel stated that his policy was to show all available evidence to a defendant, so he felt secure that he would have shared the police reports with Petitioner prior to trial. Finally, trial counsel could not recall whether he requested special jury instructions or objected to the introduction of photographs of the weapon.

*Smith*, 2010 WL 2836102, at \*\*6-8.

## III.    STANDARD

Title 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. No. 104-132, 110 Stat. 1214 (1996), provides the following with respect to granting a writ of *habeas corpus* to prisoners who are in custody pursuant to a state court judgment:

> (d)   An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> (1)   resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2)   resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

*Id.*

Where state courts have made factual determinations regarding issues presented for federal *habeas corpus* review, such determinations are presumed to be correct, and the petitioner has the burden of rebutting that presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1). The purpose of federal *habeas corpus* review is to "ensure that state court convictions

are given effect to the extent possible under the law," not to conduct a federal re-trial. *Bell v. Cone*, 535 U.S. 685, 693 (2002).

## IV.     ANALYSIS

The petitioner alleges numerous instances of ineffective assistance of counsel by his trial counsel, Monte Watkins. The court will address each alleged instance of Mr. Watkins' ineffectiveness in turn.

The Sixth Amendment to the United States Constitution, as applied to the states through the Fourteenth Amendment, guarantees the right of a person accused of a crime to the effective assistance of counsel. To prevail on a claim of ineffective assistance of counsel, a petitioner must show (1) deficient performance of counsel and (2) prejudice to the defendant. *See Bell v. Cone*, 535 U.S. 685, 694-95 (2002). Trial counsel's performance is deficient when it falls below an objective standard of reasonableness. *See Strickland v. Washington*, 466 U.S. 668, 686-87 (1984); *Combs v. Coyle*, 205 F.3d 269, 278 (6ᵗʰ Cir. 2000), *cert. denied*, 531 U.S. 1035 (2000). In assessing performance, "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation." *Strickland*, 466 U.S. at 690-91. Reasonable attorneys may disagree on the appropriate strategy for defending a client. *Bigelow v. Williams,* 367 F.3d 562, 570 (6ᵗʰ Cir. 2004).

The prejudice element requires a petitioner to show "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome."

*Strickland,* 466 U.S. at 694.

A court hearing an ineffective assistance of counsel claim must consider the totality of the evidence. *Strickland,* 466 U.S. at 695. "The determinative issue is not whether petitioner's counsel was ineffective but whether he was so thoroughly ineffective that defeat was 'snatched from the jaws of victory.'" *West v. Seabold*, 73 F.3d 81, 84 (6th Cir. 1996)(quoting *United States v. Morrow*, 977 F.2d 222, 229 (6th Cir. 1992)(*en banc*)). "Judicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable." *Strickland*, 466 U.S. at 689.

### A. Failure to Object to Jury Instruction on Transferred Intent

The petitioner contends that he received ineffective assistance of counsel at trial because trial counsel failed to object to a jury instruction on transferred intent. (Docket No. 1 ¶ 2).

#### 1. Exhaustion

The respondent contends that, although the petitioner presented this claim to the post-conviction court, he did not present it to the Court of Criminal Appeals. As a result, the respondent claims that the petitioner has failed to fully exhaust this claim, and the claim should be dismissed. (Docket No. 11 at pp. 10-11).

Although the petitioner raised nine (9) distinct claims of ineffective assistance of counsel in his brief on appeal of the denial of his petition for post-conviction relief, the petitioner did not argue that his attorney was ineffective for failing to object to a jury instruction on transferred intent. (Docket No. 12-24, at p. 12 of 16). Thus, the petitioner has never exhausted this claim.

At this time, the state court remedies for this claim are no longer available. *See* Tenn. Code Ann. § 40-30-102(a) and (c). Therefore, by way of procedural default, the petitioner technically has met the exhaustion requirement with respect to this claim. *Alley v. Bell*, 307 F.3d 380, 385 (6th Cir. 2002)(if an unexhausted claim would be procedurally barred under state law, that claim is procedurally defaulted for purposes of federal *habeas corpus* review).

## 2. Procedural Default: Cause and Prejudice

The exhaustion of a claim via procedural default does not, however, automatically entitle a *habeas* petitioner to federal review of that claim. To prevent a *federal habeas* petitioner from circumventing the exhaustion requirement in such a manner, the Supreme Court has held that a petitioner who fails to comply with state rules of procedure governing the timely presentation of federal constitutional issues forfeits the right to federal review of those issues, absent cause for the noncompliance and some showing of actual prejudice resulting from the alleged constitutional violations. *Gray v. Netherland*, 518 U.S. 152, 162 (1996).

A *habeas* petitioner cannot rely on conclusory assertions of cause and prejudice to overcome the adverse effects of a procedural default. Rather, he must present affirmative evidence or argument as to the precise cause and prejudice produced. *Lundgren v. Mitchell*, 440 F.3d 754, 764 (6th Cir. 2006). To demonstrate cause, the petitioner must show that an objective factor external to the defense interfered with his ability to comply with the state procedural rule. *Murray v. Carrier*, 477 U.S. 478, 488 (1986). To establish prejudice, there must be a showing that the trial was infected with constitutional error. *Brooks v. Tenn.,* 626 F.3d 878, 890 (6th Cir. 2010).

In his reply to the respondent's answer to the *habeas corpus* petition, the petitioner claims that his attorney's "complete abdication of responsibility" is the reason or "cause" for the

petitioner's failure to exhaust ground one in the state courts.  (Docket No. 15 at p. 4).

Even assuming *arguendo* that the petitioner has established cause,  the court finds that the petitioner cannot establish prejudice as to this claim.  In its decision on direct appeal of the defendant's conviction, the Tennessee Court of Criminal Appeals considered co-defendant's Shaun Fly's argument that his trial counsel was ineffective for failing to object to the trial court's instruction on transferred intent.  *Smith*, 1999 WL 1210813, at **18-19.  The Court of Criminal Appeals rejected Fly's claim, finding that even though the common law transferred intent doctrine was no longer applicable to statutory first degree murder cases, any error in giving the transferred intent instruction did not result in prejudice to the defendant.  In reaching its decision, the Court outlined the strong circumstantial proof that the defendants intended the premeditated killing of Kevin Robinson but instead killed Jermiyer Warfield.  Then the appellate court explained:

> *Millen* is dispositive.  In *Millen*, the supreme court characterized the instruction as error.  *Id*. at 165.  However, the *Millen* court found sufficient evidence of the crime upon proper construction of the statute and affirmed the conviction.  *Id*. at 168.  The situation at bar is analogous.  While the trial court should not have given the transferred intent instruction, the defendants were not prejudiced by it.  For the jury to have applied the transferred intent instruction, it would first have to find that the defendants intended to kill Kevin Robinson and then apply the transferred intent instruction to the actual killing of Jermiyer Warfield.  Thus, in employing the transferred intent instruction to reach a verdict, the jury necessarily found intent to "kill a person" as required by *Millen. Id.* at 168.  As such, the trial court's instruction, though error, was harmless.  Therefore, the issue of ineffective assistance of counsel is resolved against the defendant.  There is no prejudice resulting from any deficiency of performance.

*Id.* at *19.[2]

---

[2] In *Millen*, the Tennessee Supreme Court considered whether a defendant who intends to kill a specific person but instead kills a bystander is guilty of first degree premeditated and deliberate murder via application of the transferred intent doctrine.  *Millen v. State*, 988 S.W.2d 164, 164 (Tenn. 1999).  The court held that: "In short, if the evidence

As explained by the state appellate court, the transferred intent instruction was harmless error given that the jury, in applying the transferred intent instruction, would have nonetheless found the intent to kill a person required by controlling state law. Thus, as to the petitioner's counsel's failure to object to the transferred intent instruction, the petitioner cannot establish prejudice sufficient to overcome the petitioner's procedural default of ground one. Consequently, the court finds that this claim will not support an award of *habeas corpus* relief.

### 3. No Certificate of Appealability shall issue as to ground one.

When the district court denies a ground for relief on the merits in a *habeas corpus* action, a certificate of appealability "may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right," 28 U.S.C. § 2253(c)(2), the standard being whether "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Because the petitioner has not made a substantial showing of a constitutional right, a certificate of appealability will not issue with respect to the petitioner's first ground for relief.

### B. Separate Verdicts for Each Defendant

The petition next claims that trial counsel was ineffective in failing to "advance the argument that there were separate verdicts for each defendant at trial." (Docket No. 1 ¶ II). The petition does not further explain the basis for this claim. In his answer, the respondent asserts that the petitioner's claim should be dismissed because he has failed to advance a claim cognizable under either state or federal law.

---

demonstrates that the defendant intended to 'cause the result,' the death of a person, and that he did so with premeditation and deliberation, then the killing of another, even if not the intended victim (i.e., intended result), is first degree murder." *Id.* at 168.

The court agrees. In his reply to the respondent's answer, the petitioner does not address or explain this claim, even after the respondent pointed out the lack of explanation or support for the petitioner's assertion. (Docket No. 15). Consequently, the court finds that this claim will not support an award of *habeas corpus* relief.

### 1. No Certificate of Appealability shall issue as to ground two.

When the district court denies a ground for relief on the merits in a *habeas corpus* action, a certificate of appealability "may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right," 28 U.S.C. § 2253(c)(2), the standard being whether "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Because the petitioner has not made a substantial showing of a constitutional right, a certificate of appealability will not issue with respect to the petitioner's second ground for relief.

### C. Inadequate Cross-Examination of Arnett Hayes

The petitioner contends that trial counsel was ineffective in failing to adequately cross-examine Arnett Hayes. (Docket No. 1 ¶ II).

### 1. Exhaustion

The respondent contends that, although the petitioner presented this claim to the post-conviction court, he did not present it to the Court of Criminal Appeals on appeal of his denial of post-conviction relief. As a result, the respondent claims that the petitioner has failed to fully exhaust this claim, and the claim should be dismissed. (Docket No. 11 at p. 12).

In his brief on appeal of the denial of his petition for post-conviction relief, Smith advanced numerous theories of ineffective assistance of counsel, but Smith did not claim that trial counsel was

ineffective for failing to adequately cross-examine Arnett Hayes. *Smith*, 2010 WL 2836102, at *9. Thus, the petitioner has never exhausted this claim.

Because the state court remedies for this claim are no longer available, *see* Tenn. Code Ann. § 40-30-102(a) and (c), by way of procedural default, the petitioner technically has met the exhaustion requirement with respect to this claim. *Alley*, 307 F.3d at 385 (6th Cir. 2002).

### 2. Procedural Default: Cause and Prejudice

In his reply to the respondent's answer to the *habeas corpus* petition, the petitioner claims that his attorney's ineffective performance is the reason or "cause" for the petitioner's failure to exhaust this claim in the state courts. (Docket No. 15 at p. 4). However, the petitioner has not established "prejudice" as a result of trial counsel's alleged ineffective performance.

At the petitioner's state post-conviction hearing, the court noted that Smith's trial counsel had been a criminal court judge for nearly five (5) years and, prior to becoming a judge, had practiced law for approximately twenty years (25) with fifty percent (50%) of his practice devoted to criminal law. *Smith*, 2010 WL 2836102, at *7. After the hearing on the petitioner's claims, the post-conviction court determined that trial counsel had formulated and utilized a "trial strategy of effective cross-examination coupled with the alibis of the co-defendants" and that this strategy "was not an unreasonable trial strategy in this particular case and was within the range of competency for a criminal attorney." (Docket No. 12-23 at p. 25)(quoting post-conviction court's opinion). The petitioner has alleged but not shown otherwise.

Moreover, "cross-examination is a strategic and tactical decision of trial counsel which is not be measured by hindsight." *State v. Kerley*, 820 S.W.2d 753, 756 (Tenn. Crim. App. 1991). Allegations of ineffective assistance of counsel relating to matters of trial strategy or tactics do not

19

provide a basis for post-conviction relief "so long as counsel's choices are informed ones based upon adequate preparation." *House v. State*, 44 S.W.3d 508, 515 (Tenn. 2001)(quoting *Goad v. State*, 938 S.W.2d 363, 369 (Tenn. 1996)(internal quotations omitted)). Here, there is no evidence that trial counsel's preparation for this trial was inadequate. Trial counsel testified at the petitioner's post-conviction hearing that he had "spent a lot of time on this case." (Docket No. 12-12 p. 43 of 73). He testified that he had met on several occasions and discussed strategy with the attorneys of Smith's co-defendants, and that he was not surprised "at all" during the trial. (*Id.* at pp. 44-45). He also testified that he met with the petitioner "probably ten to twelve times" prior to trial and during the trial. (*Id.* at p. 49). He further testified that, during the trial, he was the third defense counsel on the order so the first two defense attorneys performed their cross-examinations of witnesses before trial counsel. (*Id.* at p. 54.). The post-conviction court accredited trial counsel's testimony, and this court has no basis for discrediting it.

The petitioner has not shown that trial counsel's alleged failure to adequately cross-examine Hayes infected the petitioner's trial with constitutional error so as to establish prejudice sufficient to overcome the petitioner's procedural default of claim three. Consequently, the court finds that this claim will not support an award of *habeas corpus* relief.

### 3. No Certificate of Appealability shall issue as to ground three.

When the district court denies a ground for relief on the merits in a *habeas corpus* action, a certificate of appealability "may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right," 28 U.S.C. § 2253(c)(2), the standard being whether "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Because the petitioner has not made a

substantial showing of a constitutional right, a certificate of appealability will not issue with respect to the petitioner's third ground for relief.

### D. Inadequate Witness Interviews

The petitioner next claims that trial counsel was ineffective in failing to interview certain witnesses before trial. (Docket No. 1 ¶¶ II-VII, XI-XII).

#### 1. Exhaustion

The respondent concedes that the petitioner has exhausted this claim. (*See* Docket No. 11 at pp. 2-3).

#### 2. State's Witnesses

The petitioner first contends that trial counsel was ineffective for failing to interview two of the state's trial witnesses, Gary Jordan and Arnett Hayes. After the post-conviction court determined that Smith had failed to establish that counsel's performance was ineffective in this regard, Smith raised this issue on appeal of the denial of his petition for post-conviction relief. The Court of Criminal Appeals found as follows:

> Petitioner argues on appeal that trial counsel's failure to interview two of the State's witnesses prior to trial resulted in ineffective assistance of counsel. Trial counsel testified that he attempted to locate witness Arnett Hayes on multiple occasions with no success and that witness Gary Jordan was represented by counsel and refused to be interviewed.
>
> The post-conviction court accredited the testimony of trial counsel and determined that his actions were reasonable. The post-conviction court also noted that witness Hayes was evading public attention prior to trial and that an attempt was actually made on his life prior to trial. Based on the record, we conclude that the evidence does not preponderate against the post-conviction court's determination that Petitioner failed to establish that counsel's performance was ineffective in this regard.

*Smith*, 2010 WL 2836102, at *11.

The court finds that the Tennessee Court of Criminal Appeals' ruling is neither contrary to nor an unreasonable application of clearly established federal law. The ruling is also based on a reasonable determination of the facts in light of the evidence presented during the petitioner's post-conviction hearing. During that hearing, trial counsel testified that he attempted, albeit unsuccessfully, to contact the witnesses. He testified that he tried to interview Jordan through his attorney, and Jordan's attorney would not allow it. Trial counsel testified that he made a number of unsuccessful attempts to contact Hayes, who was shot twice in the head just prior to the trial and was "hiding out and wouldn't talk to anybody." (Docket No. 12-12 at p. 37 of 73). After Hayes could not be located, trial counsel requested assistance from the District Attorney's Office to interview Hayes, and trial counsel was provided with a lengthy statement provided by Hayes and a transcript of previous testimony given during a juvenile proceeding. (Docket No. 12-12 at pp. 38, 44 of 73).

Even if trial counsel could have investigated more, the petitioner did not call these witnesses to testify at his post-conviction hearing to establish that the petitioner was prejudiced by his trial counsel's alleged ineffective performance in failing to investigate these witnesses' testimony prior to Smith's trial. Generally, "[w]hen a petitioner contends that trial counsel failed to discover, interview, or present witnesses in support of his defense, these witnesses should be presented by the petitioner at the evidentiary hearing." *Black v. State*, 794 S.W.2d 752, 757 (Tenn. Crim. App. 1990). The court may not speculate on what benefit these witnesses might have offered to the petitioner's case. *Id; see Daniel v. Palmer*, 719 F. Supp.2d 817, 829 (E.D. Mich. 2010)(rejecting petitioner's ineffective assistance of counsel claim where defense counsel admitted that he did not interview a

particular witness, but the record revealed that the witness had been difficult to locate and nothing in the record supported that counsel would have found the witness on his own and obtained an interview that would have led to the discovery of facts that would have been supportive of the petitioner's case).

In sum, the court finds that the petitioner has failed to establish that the state appellate court's decision rejecting his claim of ineffective of assistance of counsel based on the failure to interview Jordan and Hayes is unreasonable so as to justify federal *habeas corpus* relief.

### 3. Potential Defense Witnesses

The petitioner next claims that trial counsel was ineffective for failing to discover two potential defense witnesses ("Virie" or Vira Ashby and Chaven Marques McAfee). The petitioner raised this argument on appeal of the denial of his petition for post-conviction relief, and the Court of Criminal Appeals found:

> Next, Petitioner alleges that trial counsel failed to interview two alibi witnesses that Petitioner identified prior to trial and failed to file a "Notice of Alibi" with the trial court. At the post-conviction hearing, trial counsel acknowledged that Petitioner presented him with an alibi. Petitioner informed trial counsel that he was with his co-defendant brother. Trial counsel was unable to corroborate this alibi and determined that the alibi was not as strong as the alibis offered by the other defendants. Trial counsel felt that the best trial strategy would be to allow the alibis utilized by the other co-defendants to beat the testimony of the State's witnesses.

> The post-conviction court determined that trial counsel "carefully considered all the relevant avenues of presenting a competent defense" and the decision not to present the testimony of the purported alibi witnesses was "reasonable." We agree. Generally, "[w]hen a petitioner contends that trial counsel failed to discover, interview, or present witnesses in support of his defense, these witnesses should be presented by the petitioner at the evidentiary hearing." *Black v. State*, 794 S.W.2d 752, 757 (Tenn. Crim. App. 1990). We may not speculate on what benefit these witnesses might

> have offered to Petitioner's case. *Id.* Petitioner did not present the
> alibi witnesses at the post-conviction hearing. Accordingly,
> Petitioner has failed to demonstrate prejudice in this regard.

*Smith*, 2010 WL 2836102, at *9.

The court finds that the Tennessee Court of Criminal Appeals' ruling is neither contrary to nor an unreasonable application of clearly established federal law. The ruling is also based on a reasonable determination of the facts in light of the evidence in the petitioner's post-conviction proceeding. Trial counsel made an informed, tactical decision not to call these individuals as defense witnesses. Trial counsel testified that he had determined the best trial strategy for Smith would be to allow the alibis of the others co-defendants to effectively beat the testimony of State witness Jordan, and trial counsel tried to create as much reasonable doubt as he could through the cross-examination of Jordan. Further, because the petitioner did not present the alleged alibi witnesses or their testimony in support of his petition for post-conviction relief, he has failed to show by clear and convincing evidence that trial counsel's performance in failing to utilize these witnesses was deficient or prejudicial. If the petitioner felt that trial counsel should have interviewed other witnesses, these witnesses, too, should have been called to testify during the petitioner's post-conviction hearing; they were not. Accordingly, the court finds that the petitioner has failed to establish that the state appellate court's decision rejecting his claim of ineffective of assistance of counsel based on the failure to call two potential defense witnesses is unreasonable so as to justify federal *habeas corpus* relief.

### 4. No Certificate of Appealability shall issue as to ground four.

When the district court denies a ground for relief on the merits in a *habeas corpus* action, a certificate of appealability "may issue . . . only if the applicant has made a substantial showing

of the denial of a constitutional right," 28 U.S.C. § 2253(c)(2), the standard being whether "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Because the petitioner has not made a substantial showing of a constitutional right, a certificate of appealability will not issue with respect to the petitioner's fourth ground for relief.

### E.    Inadequate Investigation

The petitioner next claims that trial counsel was ineffective for failing to adequately investigate the facts and circumstances of the petitioner's case apart from those witnesses discussed in previous sections. Specifically, the petitioner contends that trial counsel was ineffective for failing to discover "a police report that contained exculpatory evidence which could have been used to challenge the credibility of the state witnesses." (Docket No. 1 ¶¶ VIII-X).

#### 1.    Exhaustion

It is unclear whether the petitioner intends his general allegations of inadequate investigation to make out a separate *habeas* claim. If so, the respondent urges that such a claim is procedurally defaulted as a result of the petitioner's failure to present that claim to the Court of Criminal Appeals. (Docket No. 11 at p. 14).

The respondent alternately argues that the petitioner's specific claim regarding the allegedly exculpatory police report is also procedurally defaulted because the petitioner presented the claim to the Court of Criminal Appeals in a different form than in the instant petition. (Docket No. 11 at p. 14). On post-conviction, the petitioner contended that "trial counsel failed to alert the trial court that the State failed to provide exculpatory evidence to the defense in the form of a police report." *See Smith*, 2010 WL 2836102, at *11. However, in the instant petition, Smith alleges that trial

counsel was ineffective for failing to *discover* the police report, not for failing to report alleged State misconduct.

To be properly exhausted, a claim must be presented under the same theory in state and federal courts. *Gray v. Netherland*, 518 U.S. 152, 163 (1996); *Franklin v. Rose*, 811 F.2d 322, 325 (6th Cir. 1987). Because the instant petition advances this claim under a new theory, the claim is not exhausted. Since the opportunity for exhausting this claim has passed, it is procedurally defaulted. *Coleman*, 501 U.S. at 750. Therefore, under either of the petitioner's theories, this particular claim for relief has not been exhausted and is procedurally defaulted.

### 2. Merits

The respondent urges that, even if the court holds this claim to be properly exhausted, trial counsel was not ineffective with regard to the police report. (Docket No. 11 at p. 15). In determining that trial counsel was not ineffective with regard to the police report, the Court of Criminal Appeals held:

> Petitioner insists that trial counsel failed to alert the trial court that the State failed to provide exculpatory evidence to the defense in the form of a police report. Trial counsel testified that the State provided him with the report.
>
> After hearing the testimony, the post-conviction court determined that the State turned over all potentially exculpatory evidence to trial counsel. Further, the post-conviction court pointed to Petitioner's failure to demonstrate that the failure to produce the police report resulted in a reasonable probability of a changed outcome at trial. Petitioner has failed to demonstrate that he was prejudiced. Therefore, he is not entitled to relief on this issue.

*Smith*, 2010 WL 2836102, at *11.

The petitioner has not demonstrated cause and prejudice sufficient to overcome his procedural default. The petitioner maintains that, had trial counsel properly investigated the facts,

circumstances, and evidence in this case, "he would have discovered a police report that contained exculpatory evidence which could have been used to challenge the credibility of the state witnesses." (Docket No. 1 at p. 9). However, trial counsel testified that the State had given him the report; therefore, no cause is shown for the petitioner's procedural default.

Trial counsel further testified that "the case was not good for the defense." (Docket No. 12-12 at p. 53 of 73). Indeed, given the evidence weighing against the petitioner, it was not the admission of or absence of a police report that resulted in the petitioner's convictions. The petitioner has not shown that the police report's presence or absence prejudiced his case. Therefore, this claim does not support an award of habeas relief even if it is not procedurally defaulted.

### 3. No Certificate of Appealability shall issue as to ground five.

When the district court denies a ground for relief on the merits in a *habeas corpus* action, a certificate of appealability "may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right," 28 U.S.C. § 2253(c)(2), the standard being whether "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Because the petitioner has not made a substantial showing of a constitutional right, a certificate of appealability will not issue with respect to the petitioner's fifth ground for relief.

### F. Failure to Object to Hearsay Statements and Prosecution Remarks

The petitioner next alleges that trial counsel was ineffective in failing to object to hearsay and other statements offered by the State at trial. The petitioner also appears to argue that counsel was ineffective for failing to object to certain remarks made by the prosecutor during closing argument. (Docket No. 1 ¶ XXI).

### 1. Exhaustion

The respondent concedes that the petitioner has exhausted the petitioner's claim based on counsel's alleged failure to object to hearsay statements. (*See* Docket No. 11 at pp. 2-3).

### 2. Merits

The petitioner argued on appeal of the denial of his petition for post-conviction relief that trial counsel had failed to object to certain hearsay statements that were offered at trial by some of the State's witnesses. *Smith*, 2010 WL 2836102, at **10-11. The Court of Criminal Appeals noted that the petitioner had not identified any specific statements by witnesses that amounted to hearsay and were objectionable. (*Id.*) Moreover, trial counsel testified at the hearing that repeated objections might have had a derogatory effect on the petitioner's case. (*Id.*)

The Court of Criminal Appeals then determined that counsel was not ineffective in this regard:

> The post-conviction court determined that trial counsel's inaction was a matter of trial strategy. Specifically, the post-conviction court noted that neither of the other defense attorneys objected to the alleged hearsay statements and that the lack of an objection was "reasonable" under the circumstances. Based on the record, we conclude that the evidence does not preponderate against the post-conviction court's determination that Petitioner failed to establish that counsel's performance was ineffective in this regard.

*Smith*, 2010 WL 2836102, at *12.

The court finds that the Tennessee Court of Criminal Appeals' ruling is neither contrary to nor an unreasonable application of clearly established federal law. The ruling is also based on a reasonable determination of the facts in light of the evidence in the petitioner's post-conviction proceeding. The evidence shows that trial counsel made a strategic, reasoned decision not to object to the hearsay statements.

28

If the petitioner intended to raise an ineffective assistance claim premised on trial counsel's failure to object to the prosecutor's remarks during closing argument, the court notes that, on direct appeal of the petitioner's conviction, the state appellate court acknowledged that some of the statements made by the prosecutor were "suspect" and "improper." *Smith*, 1999 WL 1210813, at *14. However, the court determined that any such errors were harmless due to the State's strong circumstantial case against the defendants and that the harmlessness of such errors negates a finding of ineffective assistance of counsel. *Id.*

The court finds that the Tennessee Court of Criminal Appeals' ruling is neither contrary to nor an unreasonable application of clearly established federal law. The ruling is also based on a reasonable determination of the facts in light of the evidence presented at the state court proceedings. Accordingly, the court finds that the petitioner has failed to established that the state appellate court's decision rejecting his claim of ineffective assistance of counsel based on trial counsel's failure to object to hearsay statements or prosecution remarks is unreasonable so as to justify *federal habeas* corpus relief.

### 3. No Certificate of Appealability shall issue as to ground six.

When the district court denies a ground for relief on the merits in a *habeas corpus* action, a certificate of appealability "may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right," 28 U.S.C. § 2253(c)(2), the standard being whether "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Because the petitioner has not made a substantial showing of a constitutional right, a certificate of appealability will not issue with respect to the petitioner's sixth ground for relief.

### G.    Failure to Move for Severance

The petitioner next alleges that trial counsel was ineffective for failing to move to sever the petitioner's trial from that of the other defendants.   (Docket No. 1 ¶ XXII).

#### 1.    Exhaustion

The respondent concedes that the petitioner has exhausted this claim.  (*See* Docket No. 11 at pp. 2-3).

#### 2.    Merits

At the petitioner's post conviction hearing, trial counsel testified that, if he had seen a basis for a motion for severance, he "absolutely" would have filed the motion.  (Docket No. 12-12 at p. 47 of 73).  He said that "[t]his was a serious case" and he "would have done anything [he] could to try to assist [his] client."  (*Id*.)  He explained, however, that he had felt that the motion was unnecessary. (*Id*.)

The post-conviction court agreed, pointing out that "Petitioner actually benefitted from the joint trial 'including multiple avenues of attacking the credibility of the testimony of [the State's star witness].'" *Smith*, 2010 WL 2836102, at *9.  The post-conviction court determined that it would not have been "a reasonable decision" for trial counsel to seek a severance.  *Id.*

The evidence shows that trial counsel's decision not to seek a severance was a reasoned, strategic choice based on adequate preparation.  Thus, the court agrees with the state appellate court that trial counsel's failure to seek a severance did not render counsel's representation ineffective. The ruling of the state appellate court is neither contrary to nor an unreasonable application of clearly established federal law, and the ruling was based on a reasonable determination of the facts in  light of the evidence presented at the petitioner's post-conviction hearing.  The petitioner has

failed to show by clear and convincing evidence that trial counsel was deficient or that the petitioner any resulting prejudice.

### 3. No Certificate of Appealability shall issue as to ground seven.

When the district court denies a ground for relief on the merits in a *habeas corpus* action, a certificate of appealability "may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right," 28 U.S.C. § 2253(c)(2), the standard being whether "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Because the petitioner has not made a substantial showing of a constitutional right, a certificate of appealability will not issue with respect to the petitioner's seventh ground for relief.

### H. Failure to Present Mitigation Evidence at Sentencing

Next, the petitioner claims that trial counsel was ineffective in failing to present sufficient mitigation evidence at sentencing. (Docket No. 1 ¶¶ XXIII-XXIV).

### 1. Exhaustion

The petitioner did not present this issue to the Court of Criminal Appeals. He therefore has failed to properly exhaust this claim. *Adams*, 330 F.3d at 403. Because the time for exhausting this claim has passed, it is procedurally defaulted. *Coleman*, 501 U.S. at 750.

### 2. Cause and Prejudice

The petitioner alleges that trial counsel's ineffective performance constitutes "cause" sufficient to excuse the procedural default of his eighth claim for habeas relief. However, even if trial counsel's performance in failing to present mitigation evidence at sentencing may have fallen short of what is required, the petitioner does not explain what mitigation evidence he believes trial

counsel should have presented at sentencing and how that mitigation evidence would have reduced the petitioner's sentence. As such, the petitioner has not demonstrated prejudice sufficient to overcome his procedural default of claim eight.

### 3. No Certificate of Appealability shall issue as to ground eight.

When the district court denies a ground for relief on the merits in a *habeas corpus* action, a certificate of appealability "may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right," 28 U.S.C. § 2253(c)(2), the standard being whether "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Because the petitioner has not made a substantial showing of a constitutional right, a certificate of appealability will not issue with respect to the petitioner's eighth ground for relief.

### I. Failure to Object to Admission of Photographs

Next, the petitioner claims that trial counsel was ineffective for failing to object to the introduction of certain photographs into evidence at trial. (Docket No. 1 ¶¶ XXXI-XXXIV). The challenged photographs depicted weapons not recovered in the search of the Ashby residence but similar to a gun used in the crime. During its case-in-chief, the State offered the photographs as evidence, and none of the defendants objected.

### 1. Exhaustion

The respondent concedes that the petitioner has exhausted this claim. (*See* Docket No. 11 at pp. 2-3).

### 2. Merits

The petitioner maintains that the seized weapon photographs were so prejudicial to the

defense that counsel's failure to object to their admissibility constitutes ineffective representation.

As to the issue of what impact the photographs had on the jury, the issue was raised on direct appeal.

Noting first that the defense had not objected to the photographs, the Court of Appeals concluded

that, not only were the photographs relevant, "the admission of photographs of cached weapons

would have been harmless, had there been a timely objection." Smith, 1999 WL 1210813, at *19.

The Court explained:

> . . . . the other evidence in this case demonstrated that all of the
> defendants were violent, dangerous persons. The weapons that were
> selected to be used on December 17 were an impressive array in and
> of themselves. We cannot say that evidence of a few more guns in
> the Ashby attic created any additional prejudice.

*Id.* at *16. The petitioner then raised this same issue in his post-conviction motion. On appeal of

the denial of his post-conviction relief motion, the Court of Criminal Appeals held:

> Petitioner next asserts that trial counsel was ineffective because he
> failed to file a motion to exclude a photograph of a gun that was
> similar to a gun used in the crimes. The post-conviction court noted
> that neither of the other two defense attorneys objected to the
> introduction of the photograph. Further, the post-conviction court
> determined that the lack of objection was based upon trial strategy.
> Based on the record, we conclude that the evidence does not
> preponderate against the post-conviction court's determination that
> Petitioner failed to establish that counsel's performance was
> ineffective in this regard.

*Smith*, 2010 WL 2836102, at *12.

The court finds that the Tennessee Court of Criminal Appeals' decision that trial counsel was

not ineffective in failing to object to the introduction of the gun photographs into evidence at trial

is neither contrary to nor an unreasonable application of clearly established federal law. The ruling

is also based on a reasonable determination of the facts in light of the evidence presented at the state

court proceedings. Accordingly, the court finds that no *habeas* relief is warranted on this claim.

### 3. No Certificate of Appealability shall issue as to ground nine.

When the district court denies a ground for relief on the merits in a *habeas corpus* action, a certificate of appealability "may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right," 28 U.S.C. § 2253(c)(2), the standard being whether "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Because the petitioner has not made a substantial showing of a constitutional right, a certificate of appealability will not issue with respect to the petitioner's ninth ground for relief.

### J. Failure to "Allow" Petitioner to Testify

The petitioner's final claim is that trial counsel deprived the petitioner of his right to testify at his trial. (Docket No. 1 ¶¶ XXXI-XXXIV).

### 1. Exhaustion

The respondent concedes that the petitioner has exhausted this claim. (*See* Docket No. 11 at pp. 2-3).

### 2. Merits

On appeal of the denial of post-conviction relief, the state appellate court considered Smith's contention:

> Petitioner claims that trial counsel prevented him from testifying at his own trial and failed to adequately explain to Petitioner the rights associated with testifying. Petitioner further complains about trial counsel's failure to have a hearing in compliance with *Momon v. State*, 18 S.W.3d 152 (Tenn. 1999). Trial counsel testified at the post-conviction hearing that he discussed the ramifications of testifying with Petitioner prior to trial and that Petitioner made it clear that he was not interested in testifying.

34

The post-conviction court noted that the trial court was not required to have a *Momon* hearing as the decision in *Momon* is not retroactive and post-dates Petitioner's case by three years. Further, the post-conviction court accredited the testimony of trial counsel. Specifically, the post-conviction court determined that trial counsel adequately informed Petitioner about his rights and provided him with the opportunity to testify and that Petitioner "affirmatively chose not to testify."

Based on the record, we conclude that the evidence does not preponderate against the post-conviction court's determination that Petitioner failed to establish that counsel's performance was ineffective in this regard. Further, as noted by the post-conviction court, *Momon* does not apply retroactively to Petitioner's case. *See Allen Dale Cushaw v. State*, No. E2002-00438-CCA-R3-PC, 2003 Tenn. Crim. App. LEXIS 47, 2003 WL 147025, at *7 (Tenn. Crim. App. Jan. 22, 2003), perm. app. denied (June 30, 2003). Petitioner is not entitled to relief on this issue.

*Smith*, 2010 WL 2836102, at *10.

The petitioner appears to claim that he did not knowingly and voluntarily waive his right to testify. Although the right to testify is a fundamental right subject only to knowing and intelligent waiver, "waiver of certain fundamental rights can be presumed from a defendant's conduct alone, absent circumstances giving rise to a contrary inference." *United State v. Stover*, 474 F.3d 904, 908 (6th Cir. 2007). Notably, the petitioner here does not claim that he was unaware of his right to testify or that he was somehow prevented from seeking the court's assistance in overcoming trial counsel's refusal to let the petitioner testify. "Barring any statements or actions from the defendant indicating disagreement with counsel or the desire to testify, the trial court is neither required to sua sponte address a silent defendant and inquire whether the defendant knowingly and intentionally waived the right to testify, nor ensure that the defendant has waived the right on the record." *United States v. Webber*, 208 F.3d 545, 551 (6th Cir. 2000). To the contrary:

A defendant who wants to testify can reject defense counsel's advice

> to the contrary by insisting on testifying, communicating with the trial court, or discharging counsel. At base, a defendant must alert the trial court that he desires to testify or that there is a disagreement with defense counsel regarding whether he should take the stand. When a defendant does not alert the trial court of a disagreement, waiver of the right to testify may be inferred from the defendant's conduct. Waiver is presumed from the defendant's failure to testify or notify the trial court of the desire to do so.

*Id.* (internal citations and quotation marks omitted). At the petitioner's post-conviction hearing, trial counsel testified that he remembered "very well" that he had specifically discussed with petitioner whether he wanted to testify and that petitioner did not want to testify. (Docket No. 12-12 at p. 46 of 73). Trial counsel further testified that, based on his legal experience, he felt Smith's decision was "a proper decision in this case based on the defense put on by the other co-defendants." (*Id.*)

As Smith does not show that his right to testify was impaired, he cannot show deficient performance by counsel.

The petitioner also fails to demonstrate prejudice. He gives no details about the substance of his testimony but speculates that, had he been given the opportunity to testify on his own behalf, his testimony "would have effectively beat[en] the testimony of State Chief witness Jordan." (Docket No. 1 at p. 20). The second prong of *Strickland* requires Smith to establish that "counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Strickland*, 466 U.S. at 687. The defendant must "affirmatively prove prejudice." *Id.* at 693. Smith's speculation that his testimony would have left a favorable impression with the jury does not demonstrate the required prejudice under *Strickland*. *See Clark v. Waller*, 490 F.3d 551, 558 (6th Cir. 2007) (holding that a petitioner failed to demonstrate prejudice by asserting that an uncalled witness would have aided his defense).

For these reasons, the court finds that the Tennessee Court of Criminal Appeals' decision that trial counsel did not render ineffective assistance as alleged by the petitioner in his tenth claim for relief is neither contrary to nor an unreasonable application of clearly established federal law. The ruling is also based on a reasonable determination of the facts in light of the evidence presented at the state court proceedings. Accordingly, the court finds that no *habeas* relief is warranted on this claim.

### 3. No Certificate of Appealability shall issue as to ground ten.

When the district court denies a ground for relief on the merits in a *habeas corpus* action, a certificate of appealability "may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right," 28 U.S.C. § 2253(c)(2), the standard being whether "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Because the petitioner has not made a substantial showing of a constitutional right, a certificate of appealability will not issue with respect to the petitioner's tenth and final claim for relief.

## V. CONCLUSION

Accordingly, on all grounds, the petition is hereby **DENIED**. Rule 4, Rules - - - § 2254 Cases. The petitioner's claims are **DISMISSED** with prejudice, and a certificate of appealability will not issue as to any of those claims.

An appropriate order will enter.

_Todd Campbell_
Todd J. Campbell
United States District Judge